20-3274-cv
*Knope v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of November, two thousand twenty-one.

PRESENT:
> JOSEPH F. BIANCO,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

Sharon M. Knope,

> *Plaintiff-Appellant*,

> v.                                                                                    20-3274-cv

Merrick B. Garland, in his official capacity as
Attorney General of the United States,

> *Defendant-Appellee*,

Attorney General Loretta E. Lynch, United States
Department of Justice,

> *Defendant*.

---

FOR PLAINTIFF-APPELLANT:           LINDY KORN (Charles L. Miller, II, *on the brief*),
                                                      The Law Office of Lindy Korn PLLC, Buffalo, NY.

FOR DEFENDANT-APPELLEE: KAREN F. LESPERANCE (Carina H. Schoenberger, *on the brief*), Assistant United States Attorneys *for* Carla B. Freedman, United States Attorney, Northern District of New York, Syracuse, NY.

Appeal from a decision and order of the United States District Court for the Western District of New York (Sinatra, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision and order of the district court are **AFFIRMED**.

Plaintiff-Appellant Sharon Knope appeals from the United States District Court for the Western District of New York's September 2, 2020 decision and order dismissing her employment discrimination claims against the United States Attorney's Office for the Western District of New York ("USAO WDNY") pursuant to Federal Rule of Civil Procedure 56(a).[1] Knope challenges the dismissal of her accommodation, hostile work environment, and retaliation claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*,[2] as well as her hostile work environment, retaliation, and sex discrimination claims under Title VII of the Civil Rights

---

[1] The district court did not set out its judgment in a separate document as required by Federal Rule of Civil Procedure 58(a). "Despite the lack of a judgment, this Court has jurisdiction to hear the appeal of the opinion and order, which was a 'final decision' within the meaning of 28 U.S.C. § 1291." *Hamilton v. Westchester County*, 3 F.4th 86, 90 n.2 (2d Cir. 2021); *see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 n.1 (2d Cir. 1993) ("[W]e can treat the dismissal order as a final decision for purposes of 28 U.S.C. § 1291, since lack of compliance with the separate document rule is a waivable defect, and no party has complained.").

[2] The district court constructively amended Knope's accommodation, hostile work environment, and retaliation claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, to be brought under the Rehabilitation Act. Although the ADA does not apply to federal employers, the Rehabilitation Act provides federal employees with an essentially identical remedy for employment discrimination based on disability. *See* 29 U.S.C. § 791(f); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

2

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[3] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

Knope worked as a Victim Witness Coordinator in the USAO WDNY from 1996 until 2016. Her responsibilities included managing the victim witness program, handling witness management for trials, making witness travel arrangements, answering victim questions, notifying victims of case status and rights, accompanying victims to court proceedings, and making referrals to victim assistance agencies. Since approximately 2005, Knope has suffered from celiac disease and irritable bowel syndrome, and she has undergone frequent treatment for kidney stones, which required surgical intervention. As Knope's condition worsened, a series of incidents occurred during which the USAO WDNY attorneys were unable to reach Knope after hours. On June 24 2015, Knope filed a request for accommodation seeking "[r]emoval from on call" due to the worsening of her celiac disease. App'x at 608. The parties then began discussions regarding whether after-hours on-call availability was an essential function of Knope's position and whether a reasonable accommodation could be provided. On September 18, 2015, before the parties resolved the accommodation request and on-call availability issues, Knope applied for leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, stating that she would be unable to work for an indefinite period of time. Before her FMLA leave was set to expire, she

---

[3] Knope also brought an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, which the district court also dismissed on summary judgment. Because Knope did not challenge the dismissal of the ADEA claim in her briefing on appeal, we deem it abandoned. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

submitted a new FMLA form on December 8, 2015, seeking to continue her leave. Her medical certification included a letter from her treatment provider stating that Knope could perform "[n]o work of any kind." App'x at 690. The provider's letter also explained that "[t]hese conditions are NOT expected to improve and the date of possible partial recovery is 12 months from 12/7/2015." *Id*. A few days later, the USAO WDNY informed Knope that her extended absence "had a significant impact on the office" and that her taking an additional six-month absence "without any indication of a possible return date" could warrant action. *Id.* at 694. Knope subsequently applied for disability retirement. Ultimately, the USAO WDNY denied Knope additional leave without pay. Approximately seven months after taking what had become indefinite leave, Knope was terminated.

Knope claims that the USAO WDNY's insistence on continued after-hours availability represented a failure to accommodate her medical conditions, created a hostile work environment, and demonstrated that the USAO WDNY was targeting her for removal because she is a woman and in retaliation for her Equal Employment Opportunity ("EEO") complaint with the Department of Justice and related activity. In response, the USAO WDNY contends that after-hours availability was always an essential function of Knope's position and the process of finding reasonable accommodations for Knope was cut short by the escalating symptoms of her disability, which ultimately resulted in her treatment provider certifying that she could no longer perform work of any kind, even with an accommodation. The USAO WDNY similarly contends that her professed inability to work at all, not her gender, disability, or any retaliatory motive, led to her termination, and that no hostile work environment existed.

4

## I. Standard of Review

We review a grant of summary judgment *de novo*, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). A moving party is entitled to summary judgment where the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Reasonable Accommodation Claim

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (internal quotation marks and alterations omitted). The plaintiff must also show the connections between the failure to accommodate her disability, the performance deficiencies, and the adverse employment action. *Id.*

We do not reach the question of whether after-hours on-call availability was an essential function of Knope's position because, while Knope's request for a reasonable accommodation was under consideration in September 2015, her treatment provider declared her medically unfit for *any* work. On September 21, 2015, Knope began an indefinite leave of absence because she could

not work at all even with an accommodation. In light of the change to her medical condition, Knope's attorney agreed that the USAO WDNY should hold the accommodation discussions in abeyance until closer to Knope's return. Given the uncontroverted fact that Knope could not perform the job at all – even with an accommodation – her accommodation claim fails as a matter of law.[4] *See Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2004) ("A reasonable accommodation can never involve the elimination of an essential function of a job."); *see also McBride v. BIC Consumer Prods Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (summary judgment warranted on reasonable accommodation claim where "[plaintiff] provided no evidence that there existed any potential accommodation that would have allowed her to continue to work, regardless of the form such an accommodation would have taken"). Accordingly, the district court properly granted summary judgment on this claim.

## III. Sex Discrimination Claim

Knope asserted a sex discrimination claim under Title VII, alleging that the purported adverse actions she suffered – namely, the requirement that she be available to work after hours, the failure to accommodate her disability, and her termination – were because she was a woman. As set forth below, we agree with the district court's conclusion that this claim cannot survive summary judgment.

---

[4] To the extent Knope seeks to base her accommodation claim on the USAO WDNY's failure to provide reasonable accommodation in 2013, it is undisputed that after she made the request, the USAO WDNY asked for additional documentation, which Knope did not provide, and she did not pursue the request further. Therefore, this claim also fails to survive summary judgment.

We analyze Knope's sex discrimination claim according to the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) (applying *McDonnell Douglas* framework to Title VII and New York state sex discrimination claims). Under this framework, the plaintiff must first "establish a *prima facie* case [of discrimination]; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (internal quotation marks omitted). A plaintiff establishes a *prima facie* case of sex discrimination by demonstrating that: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh*, 828 F.3d at 75 (internal quotation marks omitted).

Knope attempts to support her sex discrimination claim by noting that there is evidence that the USAO WDNY allowed one male employee "with a very serious non-physical condition" to stay home for "quite a period of time." Appellant Br. 25. "A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). However, a plaintiff "must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself" in order to raise an inference of

7

discrimination.  *Graham*, 230 F.3d at 39 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

Here, Knope provides no evidence regarding the circumstances surrounding the accommodation provided to the male employee, such that the difference in treatment "support[s] at least a minimal inference that the difference in treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).  In any event, even if the *prima facie* burden was met, the USAO WDNY has articulated a legitimate, non-discriminatory reason for her termination – namely, that she was medically unable to perform her job at all for an unknown period of time.

Knope has failed to put forth evidence from which a rational jury could find sex-discrimination based on this record.  Accordingly, we agree with the district court's grant of summary judgment on the sex discrimination claim.

**IV.     Hostile Work Environment Claims**

Knope brings her hostile work environment claims based upon disability and sex pursuant to the Rehabilitation Act and Title VII, respectively.

To prevail on a hostile environment claim under Title VII, a plaintiff must show that "a workplace is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (internal quotation marks omitted), as well as a "specific basis" for imputing the challenged conduct to the employer, *Duch v. Jakubek,* 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted).  The elements of a hostile work environment claim are the same under the ADA, and thus, the Rehabilitation Act.  *See Fox v.*

8

*Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (establishing the elements of an ADA hostile work environment claim); *see also* 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under [the ADA] . . . ."). An employee must prove both objective and subjective elements of her claim. First, the employee must prove the objective requirement, *i.e.*, that the employer created an environment that a reasonable person would find hostile or abusive. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Second, the employee must prove the subjective requirement, *i.e.*, that the employee subjectively perceived the employer's conduct as hostile or abusive. *Id.* Finally, the employee must demonstrate a causal element: that the employer created a hostile environment because of a protected characteristic. *See id.*

Knope's sporadic conflicts over nearly four years with her supervisors about her hours and work responsibilities are insufficient under the circumstances present here, even if true, to establish a hostile work environment. *See Alfano v. Costello*, 294 F.3d. 365, 374 (2d. Cir. 2002) ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive," although "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." (internal quotation marks omitted)). To the extent that Knope also alleges that the reasonable accommodation process with the USAO WDNY was itself hostile such that she was "subjected to intimidation on a daily basis," Appellant Br. at 24–25, this also fails to establish a hostile work environment because no rational jury could find that the accommodation negotiations were of such a hostile nature that they

9

altered the conditions of Knope's work environment, *see Desardouin,* 708 F.3d at 105. Accordingly, summary judgment was warranted on the hostile work environment claims.

## V.    Retaliation Claims

Knope alleges that the USAO WDNY retaliated against her under both the Rehabilitation Act and Title VII. Under the Rehabilitation Act, a plaintiff must show that she "(i) . . . was engaged in protected activity; (ii) the alleged retaliator knew that [she] was involved in protected activity; (iii) an adverse decision or course of action was taken against [her]; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks omitted). A causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks omitted).

Under Title VII, to establish a *prima facie* case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) (internal quotation marks omitted). Although private-sector Title VII retaliation claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action," *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (internal quotation marks omitted), and we have applied that same causation standard in a non-precedential summary order to retaliation claims against the federal government, *see D'Andrea v.*

10

*Nielsen*, 765 F. App'x 602, 605 (2d Cir. 2019), we do not address that issue here because Knope is unable to show the causal element under any standard.

When termination proceedings were initiated in February 2016, Knope had already exhausted all of her leave and been out of the office for months with no indication of if, or when, she would be able to return to work. Indeed, as noted above, her treatment provider submitted a letter indicating that she would be "unable to work any job for at least 12 months starting 12/7/2015." App'x at 691. Her excessive and indefinite absence serves as a legitimate, nondiscriminatory basis for termination. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work.").

Knope points to insufficient evidence from which a reasonable jury could conclude that the decision to remove her from employment was motivated by her requests for an accommodation or her EEO activity related to her disability.[5] Accordingly, summary judgment was warranted on Knope's retaliation claims.

\*        \*        \*

---

[5] Knope's claim that the USAO WDNY retaliated against her even after her termination by causing problems with her employer health coverage and benefits fails because she provides no evidence that the USAO WDNY caused those problems in retaliation for protected activity.

11

We have considered all of Knope's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the decision and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court